UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNDERDOG TRUCKING, LL.C, and REGGIE ANDERS, <br><br> Plaintiffs, <br><br> vs. <br><br> VERIZON COMMUNICATIONS INC., CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, REVEREND AL SHARPTON, NATIONAL ACTION NETWORK, DOES 1 THROUGH 9, <br><br> Defendants. | Case No.: 1:16-CV-05654 <br><br> THIRD AMENDED COMPLAINT |

## THIRD AMENDED COMPLAINT

I Reggie Anders, one of the Plaintiffs in this matter do hereby solemnly swear and state as follows:

NOW INTO COURT, through undersigned counsel, come Plaintiffs, Underdog Trucking, LLC and Reggie Anders, against Defendants,

VERIZON COMMUNICATIONS INC., CELLCO PARTNERSHIP, LL.C d/b/a VERJZON WIRELESS ("Cellco"), the REVEREND AL SHAPTON, NATIONAL ACTION NETWORK, Defendants Does 1 through Does 9, and their insurers (collectively Defendants) respectfully avers as follows:

## JURISDICTION

1.Jurisdiction of this Court arises under 28 U.S.C. § 1332, a case in which plaintiffs, citizens of the state of Arizona Defendants, citizen of various other states and the amount in damages is more than $75,000 is a diversity of citizenship case, and pursuant to 28 U.S.C. § 1367 (Supplemental Jurisdiction) for pendent state law claims.

2.Jurisdiction is proper in this case because this is a case of breach of contract and also conduct by defendant's which resulted in losses and damages to the plaintiff.

3.Venue is proper in this Court as the contract which is the cause of this litigation, was entered into in the State of New York, the defendants conduct business in the State of New York and the second and third defendants are citizens of the state of New York.

**PARTIES**

4. Plaintiffs herein (hereinafter also collectively referred to as "Plaintiffs") are:

A. UNDERDOG TRUCKING, LLC (hereinafter also referred to "Underdog Trucking" or "Underdog Trucking" or "UT"), a Limited Liability Company organized under the laws of the State of Louisiana, licensed to do business and doing business in the State of Louisiana, and having in principal place of business in Gilbert, State of Arizona.

B. REGGIE ANDERS (hereinafter also referred to "Anders"), a natural person of the full age of majority, and having his principal place of residence in Gilbert, State of Arizona and the owner of Underdog Trucking.

5. Defendants herein (hereinafter also collectively referred to as "Defendants") are the following:

A. VERIZON COMMUNICATIONS INC. (Verizon) is a Delaware corporation headquartered in New York. Verizon's consumer wireline segment, Verizon Telecom, is one of the nation's largest providers of wireline telecommunications services, including both video and broadband services as well as bundles that contain those products.

B.   CELLCO PARTNERSHIP d/b/a Verizon Wireless (Cellco) is a Delaware general partnership headquartered in Baskin Ridge, New Jersey, and doing business nationwide including New York City, NY and is the nation's largest provider of wireless services. Verizon Wireless is a joint venture owned by Verizon Communications Inc. B. Cellco Partnership, is a joint venture between Verizon Communications Inc. (hereinafter "Verizon"), which owns 55% interest and Vodafone Group , which owns a 45% interest. The partnership interest of Verizon as described above is held of record on behalf of Verizon Communications Inc. by certain subsidiaries of Verizon Communications Inc. Consisting of Bell Atlantic Cellular Holdings, L.P., NYNEX PCS Inc., PCS CO Partnership, GTE Wireless Incorporated and GTE Wireless of Ohio Incorporated.

C. REVEREND AL SHARPTON is an individual residing in New York, New York. Reverend Sharpton is the founder and President of Defendant National Action Network, Inc.

D.   NATIONAL ACTION NETWORK INC. (hereinafter "NAN", is a New York not-for-profit corporation, with its principal place of business in Harlem, New York. National Action Network also has a regional chapter that has an office, is registered to do business and operates in Maricopa County, Arizona.

**6**. DOES 1 THROUGH 9. The true names or capacities, whether individual, corporate, associate or otherwise, of the Defendants named herein as Does 1 through 19 are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names, and Plaintiffs will amend this complaint to show their true names and capacities when the same have been ascertained.

**7**. Reggie Anders, doing business as UT, had a long standing dispute with Cellco, d/b/a Verizon spanning several years from 2006 to 2013 which included a discrimination lawsuit that was eventually dismissed.

8. Somewhere in 2013, Plaintiff Reggie Anders, contacted his Reverend, David Wade, after he felt that said lawsuit aforesaid was unfairly dismissed in 2013. Rev. David Wade had his attorney, Benjamin Taylor; take a look the lawsuit to offer a second opinion.

9. After speaking with several Reverends and getting their support, Reverend David Wade had his attorney Benjamin Taylor, sent defendants Verizon and Cellco a demand letter stating if this situation was not resolved, that the community of Reverends would call for a boycott against Verizon with Reverend Al Sharpton leading the charge.

10. Verizon's Attorney's Raymond McGuire and Kristina Hammond contacted Benjamin Taylor and discussed the issues with

him, they asked that he give them a week to bring this to Verizon before the Reverends went to the press regarding the treatment of Reggie Anders and his company, UT.

11. After a few weeks, Benjamin Taylor hadn't heard anything from Verizon or their attorneys Ray McGuire and Kristina Hammond. Reggie Anders and the group of Reverends then proceeded to organize against Verizon and get Al Sharpton and other Civil Rights Activists on board.

12. Unbeknownst to Reggie Anders, Al Sharpton had been paid hush money by Verizon for years. Had Reggie Anders been aware of this conflict of interest he would never have gotten Al Sharpton involved because his Reverend, David Wade had already spoken with Jesse Jackson who was willing to help in the same manner.

13. In July of 2014, David Wade contacted the chairman of the National Action Network (N.A.N), Franklyn Richardson regarding the issues that Reggie Anders and his company, Underdog Trucking LL.C had with Verizon and gave him all the details of the case.

14. Franklyn Richardson told David Wade that Al Sharpton handled this kind of situation all the time.

15. After speaking with Al Sharpton, Mr. Richardson told reverend, David Wade, that Mr. Sharpton would take the case for a fee of $16,000.00.

16. Mr. Richardson, as an agent and employee of Al Sharpton and NAN, said that in exchange for the payment of $16,000, Al Sharpton and NAN would ensure that Al Sharpton would do everything in his power to seek justice for the plaintiffs by doing whatever was necessary to rectify the injustice done by Verizon by its discrimination against and specifically through his TV show on MSNBC "Politics Nation"; his nationally syndicated radio show "Keepin' it Real with Al Sharpton"; press conferences as well as mediation with Verizon Communications.

17. Reggie Anders and David Wade agreed to meet at the headquarters of the National Action Network in New York on August 28, 2014 to exchange the money and go over the details involving the case and solidify the plan on how to move forward.

18. At the meeting on August 28, 2014, Reggie Anders handed Reverend, David Wade the $16000.00 who handed the money to Franklyn Richardson and Al Sharpton, both present and both promising to carry their part of the bargain aforesaid in paragraph 16 above.

19. Reggie Anders, Rev. Wade, Al Sharpton, Franklyn Richardson and Michael Hardy, attorney for Al Sharpton and the National Action Network, then had a 45-minute-long meeting on what Al Sharpton would do.

20. Al Sharpton said he would arrange a meeting with the CEO of Verizon and address the issues regarding Reggie Anders' treatment by Verizon, and if that didn't get any results then he would make a lot of noise via his media programs exposing them for the discriminatory and racists practices against Reggie Anders and Underdog Trucking.

21. After about 4-6 weeks of not hearing anything from Al Sharpton, Reverend, David Wade and Reggie Anders contacted Franklyn Richardson, the chairman of National Action Network. Franklyn Richardson said he had good news, Al Sharpton was at the White House the day before and that Al Sharpton and the Vice President of Verizon had a discussion regarding the case and that a meeting was planned for later that week.

22. After another week, Reggie Anders contacted Michael Hardy, and he said that they were supposed to have a meeting but he did not have any details. He told Reggie Anders to contact him every week and he would keep Reggie Anders updated about what was going on with the case.

23. This went on for months. Reggie Anders called the National Action Network and Michael Hardy, and they would just keep giving different stories, nothing concrete about who they met with or what was discussed.

24. Reggie Anders realized they were stringing him along and had no real concern for getting the work done as agreed. Michael Hardy would name alleged meetings, but gave no details as to who Al Sharpton met with or what they discussed.

25. Reggie Anders Started making inquiries about what may have happened because he felt something was not adding up. The character, urgency motivation on the part of Reverend Al. Sharpton and NAN officials had suddenly disappeared and there was a clear disinterest in the matter of the agreement on the part of Rev. Al Sharpton and NAN.

26. When the New York Post article on January 4, 2015 was published, David Wade and Reggie Anders were concerned that Verizon was mentioned in the article in regards to its relationship with Al Sharpton. The article reported that several large corporations including Verizon had given Mr. Sharpton over $1 million for his birthday. It was hush money to keep quiet about the discriminatory and racists practices at their respective companies.

27. After making some inquiries, Reggie Anders learnt from sources that Al Sharpton and NAN had received some payments from Verizon and/or Cellco that could not be explained and which seemed to coincide with the sudden disinterest in the subject of the agreement on the part of NAN and AL Sharpton.

28. At the point Reggie Anders called Verizon's attorney, Raymond McGuire to let him know he felt that Verizon was in cahoots with Al Sharpton. Anders made him aware of the New York Post article citing his client in a January 4, 2015 titled "How Sharpton gets paid to not cry 'racism' at corporations, Verizon, and while on the phone Mr. McGuire pulled up the article and began to read it aloud. He then said "this doesn't look good." He said he would speak with his client, Verizon and would get back with Anders. Anders did not hear back from Raymond McGuire again.

29. Plaintiffs have grounds to believe that Verizon and Cellco were aware of the contract between Plaintiffs, Al Sharpton and NAN because Al Sharpton and NAN officials clearly told Reggie Anders that Verizon and NAN had been made aware of the contract and secondly, Reggie Anders had told Mr. Raymond McGuire, Counsel for Verizon and Cellco about the contract and Mr. Raymond McGuire had clearly said that he would discuss the matter with Verizon and Cellco.

30. The behavior of Cellco and Verizon after this revelation including the payment of the hush money to Al Sharpton and NAN is a clear indication that Verizon and Cellco were indeed aware of the existence of the contract

31. Al Sharpton became belligerent when Reggie Anders brought the NY Post article to his attention and questioned his conflict of interest.

32. Al Sharpton began insulting Reggie Anders and David Wade saying they were "punks" for believing that because people write about him all the time.

33. David Wade and Al Sharpton got into a heated argument because of the insults Al Sharpton was hurling. After everything calmed down, Al Sharpton assured them that he would do whatever was necessary to get satisfaction on Reggie Anders behalf, but that it would take time.

34. Al Sharpton and NAN officials instructed Reggie Anders to call the National Action Network every week, just to get the runaround.

35. Reggie Anders was told of meetings that never occurred and nothing ever materialized. There was never any proof shown that they had done anything other than an email stating that Verizon had assigned someone from their procurement group to settle the issue. Nothing transpired from that either and this went on for over a year.

36. After Reggie Anders and Reverend Wade would call to complain to Franklyn Richardson, they would get several calls from Al Sharpton saying they should get ready to fly to New York

to meet with someone from Verizon and each time he would call back to cancel and "reschedule".

37. Another time Al Sharpton called to ask Reggie Anders if he would be willing to go back to work with Verizon. Anders said yes, he would. Nothing transpired from that either.

38. Rev David Wade and Reggie Anders called Frankly Richardson and told him that they had been strung along for years and that nothing had transpired. At that point Reggie Anders ceased all contact with the National Action Network.

39. Franklyn Richardson proposed to refund the $16,000.00 back. It was at that point that Reggie Anders decided to sue Al Sharpton because of his conflict of interest and the much greater losses than just the $16,000.

40. Reverend Al Sharpton had no intention of representing Reggie Anders and was instead conspiring with Verizon to string Reggie Anders along until he would give up and still keep the $16,000.

41. As a matter of fact, Anders had incurred losses which were much greater than the $16,000.00 through travel costs, organizing costs, missed business opportunities, lost income, costs of frequent stays in New York City in pursuance of the contract and other miscellaneous costs not specifically

categorized but which will be more clearly tabulated and claimed in this suit.

42. Al Sharpton and NAN were in breach of the oral contract by failing to do their part after the plaintiffs performed their part in entirety.

43. Reggie Anders became aware that Verizon and Cellco partnership had entered into a conspiracy where they paid off the National Action Network and Al Sharpton to shut up and not pursue the subject grievances.

44. Raymond McGuire made Anders understand that Verizon was very aware of Anders' grievances and Reggie informed Mr. McGuire of the fact that something was being worked out with certain reverends to organize boycotts and other activities which would shed negative light on Verizon.

45. Reggie Anders is aware of payments made by Verizon to Al Sharpton and the National Action Network specifically to frustrate the contract between Al Sharpton and Reggie Anders.

46. Reggie Anders made multiple trips to New York City in pursuance of this oral contract including paying for hotel rooms, transportation and other expenses over a long period of time.

THIRD AMENDED COMPLAINT - 13

47. Reggie Anders also missed many business opportunities and his business suffered losses because of his frequent absence in pursuance of this contract between himself Al Sharpton

**FIRST CAUSE OF ACTION**

**(Breach of Contract by defendants Al Sharpton and NAN)**

48. Plaintiffs re-allege and incorporate by reference each and every allegation set forth in Paragraphs 1-47 above.

49. On August 28th, 2014, Reggie Anders and Underdog entered into an oral contract in which Al Sharpton and National Action Network agreed they would contact Verizon and Cellco to settle a dispute out of court and if the settlement did not occur, use Al Sharpton's Radio and television shows to bring negative public attention to discriminatory practices of Verizon and Cellco. In Exchange, Reggie Anders and Underdog would pay Al Sharpton and National Action Network $16,000.

50. Al Sharpton and National Action Network did not perform any part of their obligations under the contract therefore causing losses and damages to the plaintiffs.

51. Cellco and Verizon were aware of the contract aforesaid in paragraph 16 and motivated by their desire to suppress the potential for negative public revelation, took active steps to

conspire with Al Sharpton and the National Action Network to scuttle it by means of corruption.

52. As a result of the breach of contract and the conspiracy described, plaintiffs suffered liquidated and liquidated losses and damages to the tune of more than $1,750,000.

53. At some time, presently unknown to Plaintiffs, and continuing, on information and belief, to the present, Does 1-9 knowingly and willingly conspired and agreed with defendants to engage in a scheme to breach Reggie Anders' agreement with Al Sharpton.

54. Defendants did the acts and things alleged pursuant to, and in furtherance of, the conspiracy and above-alleged agreement.

### SECOND CAUSE OF ACTION

**(Tortious interference with a contract) [Against Defendants Verizon and Cellco]**

55. Plaintiffs allege and incorporate by reference each and every allegation set forth in Paragraphs 1-54 above.

56. The Plaintiffs had a valid contract between themselves and Al Sharpton and NAN. Plaintiffs and Al Sharpton and National Action Network had an existing a contract. [See paragraph 16].

57. Verizon and Cellco knew of the existence of the contract. [See Paragraph 28 - 30].

58. Defendants Verizon and Cellco intentionally procured the breach of that contract by paying unknown sum of money to Al Sharpton and NAN, which payment or payments were made solely out of malice and Verizon and Cellco by making the payment or payments did so dishonestly, unfairly and improperly with the desire to cause a breach of the contract and for no other reason.

59. As a result of the breach of contract, which could breach could not have occurred but for the improper, unfair, dishonest and wrong payments made by Verizon and Cellco to NAN and Al. Sharpton, the Plaintiffs suffered injury in the form of financial losses and loss of business opportunities and other unliquidated damages. [see paragraph 41].

60. As a result of defendants Verizon and Cellco tortious interference of a contract, plaintiffs are entitled to relief in the form general and special damages and full restitution and/or disgorgement of all payments, compensation and benefits which may have been obtained by any or all the defendants as a result of such actions, including the imposition of a constructive trust over the proceeds of such actions.

### **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs respectfully pray that the Court enter judgment in their favor and award them the following relief:

a. Recovery of $16000

b. Recovery of $1, 750, 000 in General Damages;

c. Any other Liquidated damages

e. Compensatory damages;

f. Full restitution and/or disgorgement of all payments, compensation and benefits which may have been obtained by any or all the defendants as a result of tortious interference with a contract, including the imposition of a constructive trust over the proceeds of such actions.

g. Pre- and post-judgment interest; and,

h. Any and all other legal and/or equitable relief to which Plaintiffs are entitled.

## DEMAND FOR TRIAL BY JURY

Come now the Plaintiffs, Reggie Anders and Underdog Trucking, LL.C., by counsel, and request a trial by jury on all issues deemed so triable.

Respectfully submitted this 2nd day of March , 2017.

s/japheth n. matemu

Japheth N. Matemu

Attorney for the Plaintiff

5640 Six Forks Road, Suite 201

Raleigh, NC 27609

Telephone (646) 726 6797

j.matemu@matemulaw.com

Attorneys for the Plaintiffs

CERTIFICATE OF SERVICE

I hereby certify that an exact and true copy of the foregoing has been filed electronically on this 3rd day of March, 2017. Notice of this filing will be sent to all parties via ECF:

Dated this 3rd of March 2017

s/japheth n. matemu
Japheth N. Matemu